UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

DR. GERALD FINKEL, as Chairman of the
Joint Industry Board of the Electrical
Industry,

                    Plaintiff,
                                            REPORT AND
        - against -                         RECOMMENDATION

INS ELECTRICAL SERVICES INC. d/b/a INS      CV 2006-4862 (SLT)(MDG)
ELECTRICAL SERVICES NYC INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiff Gerald Finkel, as Chairman of the Joint Industry

Board of the Electrical Industry (the "Joint Board"), brought this

action under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, against

defendant INS Electrical Services Inc. ("INS" or "defendant") to

recover delinquent benefit contributions and other payments

related to the delinquent contributions.  The Honorable Sandra L.

Townes referred plaintiffs' motion for default judgment to me for

report and recommendation.  See ct. doc. 7.


                         BACKGROUND

     The facts pertinent to this decision are undisputed and set

forth in plaintiff's complaint ("Compl.") (ct. doc. 1), the

Declaration of Zachary N. Leeds dated March 8, 2007 ("Leeds

Decl.") (ct. doc. 5) and the Supplemental Declaration of Mr.
Leeds dated June 1, 2007 ("Supp. Leeds Decl.") (ct. doc. 11).

In the Complaint, plaintiff alleges that the Joint Board
administers various employee benefit plans established by
collective bargaining agreements between Local Union No. 3 of the
International Brotherhood of Electrical Workers (the "Union") and
various employers in the electrical industry. See Compl. at ¶ 4.
The Joint Board is the fiduciary of various employee benefit
plans, each of which is an employee benefit plan within the
meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), and a
multi-employer plan within the meaning of section 3(37) of ERISA,
29 U.S.C. § 1002(37). Id. at ¶ 5. These plans include: the
Pension, Hospitalization and Benefit Fund of the Electrical
Industry ("PHBP"); the Dental Benefit Fund of the Electrical
Industry ("DEN"); the Educational and Cultural Trust Fund of the
Electrical Industry ("E&C"); the Annuity Fund of the Electrical
Industry ("ANN"); the Vacation Holiday Unemployment Plan of the
Electrical Industry ("VHUP"); the National Employees Benefit Fund
("NEBF") (collectively the "ERISA Plans") and the Deferred Salary
Plan of the Electrical Industry (the "401(k) Plan"). Id. The
401(k) Plan is a tax-qualified profit-sharing plan with a cash or
deferred arrangement within the meaning of section 401(k) of the
Internal Revenue Code. Leeds Decl. at ¶ 12.

The Joint Board also collects assessments payable to the
Union by employees who are covered by the collective bargaining
agreements and authorize their employers to withhold loan

repayments due to the Union or one of the ERISA plans. Compl. at ¶ 6; Leeds Decl. at ¶ 13. In addition, the Joint Board collects employer contributions to the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit Delinquency Fund, the Electrical Industry Loan Fund, the COPE Fund and certain contributions to the Joint Board itself, such as the Local 3 Dues Assessment and the JIB Contributions (the "Non-ERISA Plans"). Leeds Decl. at ¶ 13.

INS is a New York corporation doing business as an electrical contractor within the New York City metropolitan area, with its principal place of business located in Bayshore, New York. Compl. at ¶ 10. It is a signatory to a collective bargaining agreement between the New York Electrical Contractors Association, Inc., the Association of Electrical Contractors and the Union that covers the period of May 13, 2004 to May 10, 2007 (the "CBA"). Id. at ¶ 11. Under the CBA, INS was obligated to pay benefit contributions and submit weekly payroll reports to the Joint Board and remit contributions to the 401(k) Plan. Id. at ¶¶ 7, 11.

Plaintiff alleges that defendant failed to submit required payroll reports and to pay contributions to the ERISA and Non-ERISA Plans for the weeks ending December 6, 2006 through January 31, 2007. Compl. at ¶ 16, "WHEREFORE" clause (B); Leeds Decl. at ¶ 20. Plaintiff further alleges that defendant failed to pay 401(k) Plan contributions for the weeks ending November 15, 2006 through January 31, 2007. Compl. at ¶ 19, "WHEREFORE" clause

(B); Leeds Decl. at ¶ 27.  In addition, plaintiff alleges that the defendant paid contributions late to the ERISA and Non-ERISA Plans for the weeks ending July 26, 2006 through November 29, 2006.  Complaint at "WHEREFORE" clause (D); Leeds Decl. at ¶ 37, Exh. K and L.  Finally, plaintiff alleges that the defendant paid 401(k) Plan contributions late for the weeks ending March 8, 2006 through November 8, 2006.  Compl. at ¶ 20, "WHEREFORE" clause (D); Leeds Decl. at ¶ 38, Exh. M.

Plaintiff served INS with the summons and complaint by serving its managing agent.  <u>See</u> ct. doc. 2.  Since New York law permits personal service upon a corporation by service upon its managing agent, I find that service was properly effectuated upon defendant Interstate.  <u>See</u> N.Y. C.P.L.R. § 311(a)[1]; <u>see also</u> Fed. R. Civ. P. 4(h)(1)(B).  Because defendant has not appeared, default is properly entered against it.

Following defendant's failure to answer plaintiffs' complaint, plaintiffs filed a motion for judgment by default.  <u>See</u> ct. doc. 5.  Defendant subsequently submitted payroll reports for the weeks ending December 6, 2006 through January 31, 2007.  <u>See</u> Supp. Leeds Decl. at ¶ 11.  Because the plaintiffs' original calculations submitted with the motion were estimated, plaintiff recalculated the amounts owed based on the payroll reports submitted, as set forth in the Supplemental Leeds Declaration and the exhibits annexed thereto.

DISCUSSION

I.   <u>Legal Standards Governing Default</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages.  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981).  A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.  <u>Greyhound</u>, 973 F.2d at 159.  The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded."  <u>Id.</u>

The court must ensure that there is a reasonable basis for the damages specified in a default judgment.  In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  <u>Action S.A. v. Marc Rich and Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. Conticommodity Serv, Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).  The moving party is entitled to all reasonable inferences from the evidence it offers.  <u>Au Bon Pain</u>, 653 F.2d at 65; <u>Directv, Inc. v. Hamilton</u>, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II.  Liabilitiy of Defendants

     The ERISA Plans are multi-employer employee benefit plans
under ERISA, 29 U.S.C. §§ 1002(3), (37), 1132(d)(1) and 1145,
while INS is an employer under the terms of that statute, 29
U.S.C. §§ 1002(5), 1145, and the LMRA, 29 U.S.C. § 185(a).  As a
"fiduciary" of the ERISA Plans within the meaning of ERISA, see
29 U.S.C. § 1002(21)(A), the Joint Board may bring a civil action
to enforce the provisions of a plan under ERISA.  See 29 U.S.C.
§ 1132(a)(3).  The Joint Board may also enforce the employer's
obligations to the Union under the CBA through the LMRA.  29
U.S.C. § 185.

     Section 515 of ERISA requires "[e]very employer who is
obligated to make contributions to a multiemployer plan under the
terms of a plan or under the terms of a collectively bargained
agreement . . . [to] make such contributions in accordance with
the terms and conditions of such plan or such agreement."  29
U.S.C. § 1145.  Here, INS was required by the CBA to pay benefit
contributions to the Plans and contributions to the 401(k) Plan.
It is undisputed that it failed to comply with these requirements
for the weeks ending December 6, 2006 through January 31, 2007
and November 15, 2006 through January 31, 2007, respectively, and
submitted contributions to the Plans late for the weeks ending
July 26, 2006 through November 29, 2006 and 401(k) contributions
late to the 401(k) Plan for the weeks ending March 8, 2006
through November 8, 2006.  Although plaintiff has no right under

ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed (contributions paid prior to September 8, 2006), see Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995) ("no [section 1132(g)(2)] suit can be commenced in the absence of unpaid contributions"), the LMRA provides a statutory basis for recovering damages for those untimely contributions in violation of the CBA.  See Finkel v. East End Elec. Assocs., Ltd., No. 06-CV-2129, 2007 WL 2572169, at *7-*8 (E.D.N.Y. July 10, 2007); see also Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001) (Fund could enforce a plan's provisions imposing interest and liquidated damages on late contributions paid before the suit was brought even where § 1132(g)(2) did not apply); Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 390 (6th Cir. 1991) ("a fund has a valid claim for late payment and/or audit damages pursuant to its collective bargaining agreements with defendants"); LaBarbera v. T&M Specialties Ltd., No. CV-06-5022, 2007 WL 2874819, at *2 (E.D.N.Y. Sept. 27, 2007); Bd. of Trs. of Local 41, Intern. Broth. of Elec. Workers Health Fund v. Zacher, 771 F. Supp. 1323, 1336 (W.D.N.Y. 1991). Similarly, liability for delinquent contributions to the Non-ERISA Plans is found under the LMRA rather than ERISA.  See id. Thus, INS is liable to the Joint Board under both ERISA and the LMRA for unpaid or late contributions.

I further note that plaintiffs request damages relating to contributions that did not become due until after the complaint was filed on September 8, 2006. Rule 54(c) of the Federal Rules of Civil Procedure generally limits a plaintiff's recovery to the relief sought in the complaint. See Fed. R. Civ. P. 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."). Therefore, damages that accrued during the pendency of the litigation can be awarded only if the complaint put the defendant on notice that plaintiffs may seek additional damages for contributions that became due and owing. See Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007); T&M Specialties, 2007 WL 2874819, at *3; Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Here, the Complaint specifically states that "additional amounts will continue to become due and owing during the pendency of this action." Compl. at ¶ 23. Moreover, the Wherefore Clause of the Complaint requests unpaid contributions "for any weeks that are unpaid as of the date judgment is entered and thereafter" and "interest on all monies due to the Joint Board." Id. at "WHEREFORE" clause (B), (D). Thus, I find that defendant had sufficient notice that it could be held liable for damages that became due and owing after the filing of the complaint.

II. <u>Determination of Damages</u>

Section 502(g)(2)(B) of ERISA provides that a fiduciary
seeking to enforce provisions of an employee benefit plan is
entitled to recover:

> (A) the unpaid contributions; (B) interest on the
> unpaid contributions; (C) an amount equal to the
> greater of -- (I) interest on the unpaid contributions,
> or (ii) liquidated damages provided for under the plan
> not in excess of 20 percent ... of the [unpaid
> contributions]; (D) reasonable attorney's fees and
> costs of the action ....

29 U.S.C. § 1132(g)(2). The LMRA provides for relief for the
breach of a collective bargaining agreement. <u>See</u> 29 U.S.C.
§ 185. Such relief includes pre-judgment interest at the court's
discretion and at a rate in the court's discretion. <u>See</u> <u>Lodges</u>
<u>743 and 1746, Int'l Ass'n of Machinists and Aerospace Workers,</u>
<u>AFL-CIO v. United Aircraft Corp.</u>, 534 F.2d 422, 446-47 (2d Cir.
1975); <u>Serv. Employees Int'l Union, Local 32BJ v. Stone Park</u>
<u>Assocs.</u>, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004).

A. <u>Unpaid Contributions</u>

Plaintiffs base their claim for damages for unpaid
contributions for the weeks ending December 6, 2006 through
January 31, 2007 on the data contained in payroll reports
submitted by defendant. <u>See</u> Supp. Leeds Decl. at ¶¶ 11, 16-19,
Exhs. A at 7-9, 12-14, 25, 53-56, 75-76, B, C. Plaintiff has
calculated unpaid contributions to be in the amount of
$68,624.92. <u>Id.</u> at ¶ 18, Exh. C. After review of the weekly
payroll reports, I concur with plaintiff's calculations
summarized in Exhibit C of the Supplemental Leeds Declaration

with one exception. I find that plaintiff miscalculated the unpaid contributions on behalf of employees classified as "A" Journeypersons for the week ending December 13, 2006 because he incorrectly based the calculation on standard gross wages in the amount of $9,487.00 and total gross wages in the amount of $10,958.00. See Supp. Leeds Decl., Exh. C. However, the payroll report for the week ending December 13, 2006 reflects Journeyperson's standard gross wages in the amount of $8,737.00 and total gross wages in the amount of $9,833.00. See id., Exh. B. Thus, the unpaid contributions on behalf of Journeypersons for the week ending December 13, 2006 are as follows:

| Plan | Plaintiff's Total | Corrected Total |
|------|-------------------|-----------------|
| PHBP | $3,399.13 | $3,178.55 |
| DEN | $ 193.53 | $ 178.23 |
| VHUP | $1,639.31 | $1,541.81 |
| ANN | $1,015.00 | $1,015.00 |
| E&C | $ 18.97 | $ 17.47 |
| NEBF | $ 328.74 | $ 294.99 |
| JIB | $ 98.00 | $ 90.25 |
| EESISP | $ 684.88 | $ 546.06 |
| Delinquency | $ 71.15 | $ 65.53 |
| Dues | $ 109.58 | $ 98.33 |
| Loan | $ 100.00 | $ 100.00 |
| COPE | $ 2.74 | $ 2.74 |
| **TOTAL** | **$7,661.03** | **$7,128.96** |

After adjusting for the $532.07 discrepancy, I recommend that the Court award plaintiff for unpaid contributions to the

Plans in the amount of $68,092.85.

The Joint Board is also entitled to recover unpaid 401k contributions for the weeks ending November 15, 2006 through January 31, 2007. See id. at ¶ 20. Plaintiff has calculated the amount due based on 401(k) Plan reports submitted by defendant, a sufficient basis for determination of damages. Id. at ¶ 20, Exh. D. After review of the Plan reports, I concur with plaintiff's calculations and recommend that the Court award plaintiff $21,700.24 in unpaid 401k contributions. See id., Exh. D.

B. Interest

Under ERISA, section 502(g)(2)(B) authorizes an award of "interest on unpaid contributions [which] shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of [the Internal Revenue Code]." 29 U.S.C. § 1132(g)(2). As discussed above, however, there is no statutory liability under ERISA for delinquent contributions that were paid before the suit was filed nor for delinquent contributions due to the Non-ERISA Plans. Under the LMRA, it is within the court's discretion to award prejudgment interest. See United Aircraft, 534 F.2d at 446; Stone Park, 326 F. Supp. 2d at 555. I recommend that the Court award prejudgment interest under the LMRA, since such interest would not be contrary to the remedial purposes of the statute and would insure that the beneficiaries of the plans are compensated for the lost income due to any delay in payment. See Wickham Contracting Co., Inc. v. Local Union No. 3, 955 F.2d 831, 835 (2d Cir. 1992) (affirming

-11-

award of prejudgment interest under Section 303(b) of the LMRA).

Plaintiff seeks an award of interest for the PHBP and the NEBF according to the rates set forth in those Plans' Trust Agreements. See Supp. Leeds Decl. at ¶¶ 25-26; Leeds Decl., Exhs. F at 19-20, G at 11. For the remainder of the Plans, however, plaintiff seeks interest either at the rate prescribed by the PHBP or the rate specified under section 502(g)(2)(B), which incorporates the interest rate set in the Internal Revenue Code for underpayments under 26 U.S.C. § 6621(a)(2) (the "underpayment rate"). See Supp. Leeds Decl. at ¶ 27. Plaintiff provides no explanation as to why it applies the PHBP rate to other Plans.

The PHBP trust agreement states that "interest on the unpaid contributions [is to be] determined at a rate of one-half percent (½%) above the prime rate quoted by Citibank as of the first of each calendar quarter." Leeds Decl., Exh. F at 19-20. The NEBF trust agreement provides that an interest rate of 10 percent is applied to delinquent contributions. See id., Exh. G at 11.

I recommend that the Court award interest on unpaid contributions to the NEBF at a rate of 10%. With respect to the PHBP, because Citibank, N.A. no longer publishes its prime rate, plaintiff now seeks to substitute the prime rate published by the Federal Reserve Board to calculate the interest on the delinquent contributions to the PHBP. Rather than substituting the Federal Reserve Board's prime rate, which was not mentioned in either the CBA or the Trust Agreements, I recommend that the Court apply the

underpayment rate to all the remaining Plans.  See 29 U.S.C. § 1132(g)(2).  This rate, the default rate in the absence of a rate in a plan, reflects the considered judgment of Congress regarding the appropriate compensation to plaintiffs for loss of the use of the delinquent contributions required under CBAs and related trust agreements.  Cf. S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1476-77 (2d Cir. 1996) (upholding prejudgment interest award in securities fraud case at the rate the Internal Revenue Service charges on delinquent taxes, recognizing "the circumstances here, where defendants have had the use of the money").

### 1.   Unpaid Contributions

According to its trust agreement and the CBA, the amount of interest on unpaid NEBF contributions should be calculated at a rate of 10 percent[1] from the end of each month that payment was due, rather than from the end of each reported week, as plaintiff calculated.  See Leeds Decl., Exhs. A at 25, G at 11. Accordingly, interest through March 31, 2008 is calculated as follows:

---

[1] Although the trust agreement provides for interest to be compounded monthly, see Leeds Decl., Exh. G at 11, plaintiff seeks only simple interest.  See Supp. Leeds Decl., Exh. G.

| Time Period | Unpaid Contributions | Per Diem | Number of Days | Interest |
|---|---|---|---|---|
| 12/6/06 | $    251.24 | $.07 | 456 | $      31.92 |
| 12/13/06 | $    331.45 | $.09 | 456 | $      41.04 |
| 12/20/06 | $    476.30 | $.13 | 456 | $      59.28 |
| 12/27/06 | $    471.78 | $.13 | 456 | $      59.28 |
| 1/3/07 | $    206.77 | $.06 | 425 | $      25.50 |
| 1/10/07 | $    373.13 | $.10 | 425 | $      42.50 |
| 1/17/07 | $    240.27 | $.07 | 425 | $      29.75 |
| 1/24/07 | $    283.54 | $.08 | 425 | $      34.00 |
| 1/31/07 | $    145.53 | $.04 | 425 | $      17.00 |
| **TOTAL** | $ 2,780.01 | | | **$      340.27** |

Thus, I recommend that the Court award $340.27 in interest on unpaid NEBF contributions through March 31, 2008 and at a daily rate of $.76 until the entry of judgment.  See Supp. Leeds Decl., Exhs. B, G.

As to the remaining Plans, although the underpayment rate is adjusted quarterly, that interest rate has held steady at 8 percent from November 15, 2006 until the current quarter when it dropped to 7 percent.  See Leeds Supp. Decl., Exh. F (chart of underpayment rates);

http://www.dol.gov/ebsa/calculator/a2underpaymentrates.html.

The amount of interest on unpaid contributions for the remaining Plans is calculated at 8 percent through December 31, 2007 as follows:

| Time Period | Unpaid Contributions | Per Diem | Number of Days Through 12/31/07 | Interest |
|---|---|---|---|---|
| 12/6/06 | $ 6,098.42 | $1.34 | 390 | $ 522.60 |
| 12/13/06 | $ 7,576.83 | $1.66 | 383 | $ 635.78 |
| 12/20/06 | $10,515.03 | $2.30 | 376 | $ 864.80 |
| 12/27/06 | $10,315.27 | $2.26 | 369 | $ 833.94 |
| 1/3/07 | $ 5,241.38 | $1.15 | 362 | $ 416.30 |
| 1/10/07 | $ 8,703.67 | $1.91 | 355 | $ 678.05 |
| 1/17/07 | $ 5,954.20 | $1.31 | 348 | $ 455.88 |
| 1/24/07 | $ 7,151.40 | $1.57 | 341 | $ 535.37 |
| 1/31/07 | $ 3,756.26 | $.82 | 334 | $ 273.88 |
| **TOTAL** | $65,312.46 | | | **$ 5,266.60** |

Interest of 7 percent on the unpaid contributions from January 1, 2008 through March 31, 2008 accrues at a daily rate of $12.53 until the entry of judgment or $1,140.23 ($12.53 x 91 days).  See Supp. Leeds Decl., Exhs. B, G.  Thus, I recommend that the Court award interest on the unpaid contributions through March 31, 2008 of $6,646.71.

As for unpaid 401k contributions for the weeks ending November 15, 2006 through January 31, 2007, I find that plaintiff correctly calculated the 8 percent interest due in the amount of $749.88 as of June 1, 2007.  See id., Exh. G.  Plaintiff is entitled to additional interest at a rate of 8 percent in the amount of $1,018.64 from June 1, 2007 through December 31, 2007 ($4.76 x 214 days) and interest at a rate of 7 percent in the amount of $378.56 from January 1, 2008 through March 31, 2008 (91 days x $4.16).  Accordingly, I recommend that the Court award

plaintiff interest on the unpaid 401(k) contributions of $2,147.08 and thereafter at a daily rate of $4.16 until the entry of judgment.

        2.   <u>Late-Paid Contributions</u>

Plaintiff also seeks an award of interest on late-paid contributions for the weeks ending July 26, 2006 through November 29, 2006. <u>See</u> Supp. Leeds Decl. at ¶ 30. Again, I recommend that the Court apply an interest rate of 10 percent for late contributions to the NEBF and the underpayment rate to the remaining Plans. Accordingly, plaintiff calculated the amount of interest due on late-paid NEBF contributions at a rate of 10 percent in the amount of $65.60.[2] <u>See</u> Leeds Decl., Exhs. J, L. The amount of interest on late-paid contributions for the remaining Plans calculated at 8 percent, the applicable underpayment rate, is as follows:

---

[2] Although plaintiff again calculates interest due on contributions to the NEBF starting at the end of each reported week instead of from the end of the month that the contributions were due, the difference in interest is <u>de minimis</u> here.

| Time Period | Late Paid Contributions | Per Diem | Date Paid | Number of Days | Interest |
|---|---|---|---|---|---|
| 7/26/06 | $ 7,485.92 | $1.64 | 9/27/06 | 63 | $     103.32 |
| 8/2/06 | $ 6,917.62 | $1.52 | 9/27/06 | 56 | $      85.12 |
| 8/9/06 | $ 7,860.56 | $1.72 | 9/27/06 | 49 | $      84.28 |
| 8/16/06 | $ 8,316.39 | $1.82 | 9/27/06 | 42 | $      76.44 |
| 8/23/06 | $ 8,270.15 | $1.81 | 9/29/06 | 37 | $      66.97 |
| 8/30/06 | $ 7,664.68 | $1.68 | 11/6/06 | 68 | $     114.24 |
| 9/6/06 | $ 5,880.87 | $1.29 | 11/6/06 | 61 | $      78.69 |
| 9/13/06 | $ 8,313.66 | $1.82 | 11/6/06 | 54 | $      98.28 |
| 9/20/06 | $ 7,927.76 | $1.74 | 11/8/06 | 49 | $      85.26 |
| 9/27/06 | $ 3,869.91 | $ .85 | 11/14/06 | 48 | $      40.80 |
| 10/4/06 | $ 6,701.03 | $1.47 | 11/14/06 | 41 | $      60.27 |
| 10/11/06 | $ 5,381.61 | $1.18 | 11/14/06 | 34 | $      40.12 |
| 10/18/06 | $ 6,700.33 | $1.47 | 11/14/06 | 27 | $      39.69 |
| 10/25/06 | $ 4,744.94 | $1.04 | 12/18/06 | 54 | $      56.16 |
| 11/1/06 | $ 4,210.66 | $ .92 | 12/18/06 | 47 | $      43.24 |
| 11/8/06 | $ 3,892.10 | $ .85 | 12/18/06 | 40 | $      34.00 |
| 11/15/06 | $ 4,266.18 | $ .94 | 1/18/06 | 64 | $      60.16 |
| 11/22/06 | $ 5,011.47 | $1.10 | 1/18/06 | 57 | $      62.70 |
| 11/29/06 | $ 3,707.00 | $ .81 | 1/18/06 | 50 | $      40.50 |
| **TOTAL** | | | | | **$ 1,270.73** |

Thus, the amount of interest due to the Joint Board on late-paid contributions to the remaining Plans is $1,270.73.  See id.

    As for late-paid 401k contributions for the weeks ending March 8, 2006 through November 8, 2006, plaintiff correctly calculated the interest due in the amount of $4,061.16 by applying the applicable underpayment rate.  See Supp. Leeds Decl.

at ¶ 31, Exh. H.  Accordingly, I recommend taht the Court award plaintiff interest in the amount of $4,061.16 on the late-paid 401(k) contributions.[3]

　　C.　Liquidated Damages

Section 502(g)(2)(c) of ERISA also provides for additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of -- (I) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)."  29 U.S.C. § 1132(g)(2)(C).  The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA.  Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan, No. 05 Civ. 6819, 2006 WL 1292780, at *4 (S.D.N.Y. May 11, 2006); see also Idaho Plumbers & Pipefitters v. United Mechanical, 875 F.2d 212, 215 (9th Cir. 1989).  The CBA also provides that "the Employers shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damage[s] of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions."  Leeds Decl., Exh. A at 12.  Thus, the Funds are entitled to liquidated damages for unpaid contributions to the

_____

[3] Plaintiff appears to seek additional interest in the amount of $69.46 on the late-paid 401(k) contributions without explanation.  See Supp. Leeds Decl., Exh. H.  I recommend that this request be denied.

-18-

ERISA Plans and the 401(k) Plan in the amount of $15,959.86 as follows:

| Plan | Unpaid Contributions | Liquidated Damages |
|------|---------------------|--------------------|
| PHBP | $30,703.30 | $ 6,140.66 |
| DEN | $ 1,740.11 | $ 348.02 |
| VHUP | $14,281.33 | $ 2,856.27 |
| ANN | $ 9,423.70 | $ 1,884.74 |
| E&C | $ 170.59 | $ 34.12 |
| NEBF | $ 2,780.01 | $ 556.00 |
| 401(k) | $20,700.24 | $ 4,140.05 |
| **TOTAL** | $79,799.28 | **$15,959.86** |

D.    Attorneys' Fees and Costs

The Funds are also entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). The award of attorneys' fees is mandatory. See Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117-18 (2d Cir. 2007); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989). In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to

the client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131,

133 (2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d

Cir. 1985).  If any expenditure of time was unreasonable, the

court should exclude these hours from the lodestar calculation.

<u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133.  The court

should thus exclude "excessive, redundant or otherwise

unnecessary hours, as well as hours dedicated to severable

unsuccessful claims."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422,

425 (2d Cir. 1999).  A party seeking attorneys' fees bears the

burden of supporting its claim of hours expended by accurate,

detailed and contemporaneous time records.  <u>New York State Ass'n</u>

<u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d

Cir. 1983).

    The reasonable hourly rates should be based on "rates

prevailing in the community for similar services of lawyers of

reasonably comparable skill, experience, and reputation."  <u>Cruz</u>

<u>v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994)

(citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)).

Determination of the prevailing market rates may be based on

evidence presented or a judge's own knowledge of hourly rates

charged in the community.  <u>Chambless</u>, 885 F.2d at 1059.  The

"community" is generally considered the district where the

district court sits.  <u>See</u> <u>Arbor Hill</u>, 493 F.3d at 118.

    Plaintiffs seek to recover fees of $7,152.50[4] based on rates

_____

    [4] Plaintiff miscalculated the amount requested as $8,465.00.
(continued...)

of $225.00 per hour for counsel James R. Grisi, $200.00 per hour for counsel David R. Hock and Zachary N. Leeds and $75.00 per hour for paralegals Megan E. Ridley, Peter M. Ellis, Allen C. Campos and Olivia Bright.  Supp. Leeds Decl. at ¶ 39.  I find the billing rates of Mr. Grisi and Mr. Hock of $225 and $200 per hour, respectively, to be reasonable based on my knowledge of prevailing rates for such matters in New York.  See LaBarbera v. D&R Materials, Inc., 06-CV-2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (approving rate of $340 per hour for senior attorney); LaBarbera v. ESL Home Remodeling Inc., No. 06-CV-1372, 2007 WL 708359, at *6 (E.D.N.Y. Feb. 28, 2007) (awarding $275 per hour for partner); Mingoia v. Crescent Wall Sys., No. 03 Civ. 7143, 2004 U.S. Dist. LEXIS 16761, at *16 (S.D.N.Y. Aug. 23, 2004) (awarding $325 per hour for attorney with at least ten years of ERISA litigation experience).  However, I find the rate of $200 per hour for Mr. Leeds to be too high for an associate practicing since 2005.  Accordingly, I respectfully recommend that Mr. Leed's rate be reduced to $150 per hour.  See ESL Home Remodeling, 2007 WL 708359, at *6 (reducing associate's rate to $150 per hour); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding $100 per hour for associate admitted in 2005); LaBarbera v. J.E.T. Res.,

---

[4](...continued)
See Supp. Leeds Decl. at ¶ 39.  This mistake stems from its miscalculation of fees attributable to Ms. Ridley.  Plaintiff states that Ms. Ridley expended 30.1 hours at a billing rate of $75 per hour equaling $3,570.00.  Id.  However, 30.1 multiplied by $75 totals only $2,257.50.

Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (awarding associate $150 per hour). I further recommend that the paralegals' billing rate of $75 per hour be approved. See ESL Home Remodeling, 2007 WL 708359, at *6 (awarding $70 per hour for paralegal); Finkel v. Tech Man, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for paralegal).

Having reviewed the billing records submitted, see Supp. Leeds Decl., Exh. I, I find that the time spent on this case of 17.6 hours of attorneys' time and 48.4 hours of paralegals' time to be reasonable in light of the work completed. See Marton v. HST Roofing, Inc., 03-CV-4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22, 2007) (awarding fees for 20 hours of attorney time and five hours for paralegal time in ERISA default judgment case); LaBarbera v. Liepper & Sons, Inc., No. CV-06-137, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.7 hours reasonable in ERISA default judgment case); Del Turco v. Carrara Contractors, Inc., No. 03 CV 5538, 2006 WL 1783632, at *3-*4 (E.D.N.Y. June 23, 2006) (awarding fees for 25.05 hours for attorneys and 2.6 hours for legal assistants in ERISA default judgment case). In addition to preparing the complaint and default papers filed in this case and attempting to negotiate a settlement of the action, counsel drafted a prior version of the default papers was drafted in December 2006. Leeds Decl. at ¶ 48. At that time, the defendant paid most of the amounts then due and the default application was redrafted to account for

amounts that had become due since the prior version had been
drafted.  Id.  As discussed above, plaintiff calculated the
amounts due based on payroll reports that defendant submitted
after plaintiff filed the motion for default.  A  substantial
amount of the time expended by paralegals was spent calculating
the contributions and interest using various formulas and
interest rates.  Thus, I recommend that the Funds be awarded
$6,287.00 in attorney's fees.

Plaintiff also seeks $770.44 in costs, including $350.00 for
the Court's filing fee, $50.00 for service fees and additional
costs in the amount of $370.44 for meals, computer research,
photocopies, postage and secretarial overtime.  Supp. Leeds Decl.
at ¶ 43, Exh. I.  Awardable costs include "those reasonable out-
of-pocket expenses incurred by attorneys and ordinarily charged
to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748,
763 (2d Cir. 1998) (quoting United States Football League v.
Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)).
Compensable costs include but are not limited to copies,
telephone charges, and postage.  Id.  I find that $770.44 in
costs are recoverable litigation costs and are reasonable.  See
Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, 369 F.3d 91, 98 (2d Cir. 2004) ("on-line research
services . . . may properly be included in a fee award"); Aston
v. Secretary of Health & Human Servs., 808 F.2d 9, 12 (2d Cir.
1986) (photocopying and postage are reimbursable costs); Aiello
v. Town of Brookhaven, No. 94 CV 2622, 2005 WL 1397202, at *8

(E.D.N.Y. 2005) (awarding Westlaw charges and transcription fees). Accordingly, I respectfully recommend that the plaintiff be awarded $770.44 in costs.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the court award the Funds judgment against INS Electrical Services Inc. in the amount of $127,101.27 based on the following total damages: (a) $89,793.09 for unpaid contributions; (b) $14,291.27 for pre-judgment interest through March 31, 2008 and at a daily rate of $17.45 per day on the unpaid contributions until the date of judgment; (c) liquidated damages of $15,959.86; (d) $6,287.00 in attorney's fees; and (e) $770.44 in costs.

This report and recommendation will be filed electronically and a copy sent by overnight mail to the defendant on this date. Any objections to this Report and Recommendation must be electronically filed, with a courtesy copy sent to the Honorable Sandra L. Townes and the undersigned, by March 28, 2008. Failure to file objections within the specified time waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 11, 2008

                                    /s/
                                    _____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE